923 P.2d 966

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John J. ZICHKO, Defendant–Appellant.**

No. 21815.

Supreme Court of Idaho,
Coeur d'Alene, May 1996 Term.

July 29, 1996.

Bennett & Ireland, P.A., Coeur d'Alene, for appellant. Kerwin C. Bennett, argued.

Alan G. Lance, Attorney General; Lamont L. Anderson, Deputy Attorney General (argued), Boise, for respondent.

SCHROEDER, Justice

John Zichko appeals from a district court judgment of conviction and sentence entered upon a jury verdict finding him guilty of failing to register with the Kootenai County Sheriff's Office pursuant to section 18–8304 of the Idaho Code, the Sex Offender Registration Act.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Zichko was released from the custody of the Idaho Board of Correction on March 28, 1994. Prior to his release a department of correction official gave Zichko a written notice of his duty to register which Zichko signed. Zichko traveled to Kootenai County and stayed at the St. Vincent de Paul men's shelter in Coeur d'Alene from March 31 through April 5, 1994. He was served with an arrest warrant on April 7, 1994, for failure to register with the Kootenai County Sheriff's Office as a sex offender within five days of entering the county.

Zichko moved to dismiss the charge on the basis that: (1) section 18–8304 is void for vagueness; (2) he was arrested prematurely because the five-day statutory registration period does not include Saturday and Sunday; (3) in the alternative, if the five-day period includes Saturdays and Sundays, he was denied equal protection under the law; and (4) he was prevented from complying with the act because the place of registration was within a three-mile radius of his former

wife's place of employment, and thus was within an area he was prohibited from entering pursuant to a civil protection order. The district court denied Zichko's motion, and the case proceeded to trial.

Sandra Brillon was the manager of the St. Vincent de Paul shelter in March and April of 1994. She testified that when Zichko arrived at the shelter on March 31, 1994, he told her that he had been in the Coeur d'Alene area since the previous day.

Glen Sommerfield, a Department of Health and Welfare eligibility examiner, testified that on March 31, 1994, Zichko applied for food stamps, Medicaid, and a state grant, listing the shelter as his address on the application form. Sommerfield also testified that he advises applicants that they must be a resident of Kootenai County to apply for benefits, and that they must verify their claim of residency by signing the back of the application's first page. Sommerfield advised Zichko accordingly, and Zichko filled out the residency verification and signed the application.

The jury found Zichko guilty of failing to register pursuant to section 18–8304(1) of the Sex Offender Registration Act. Following a presentence investigation, the district court entered a judgment of conviction and sentence committing Zichko to the Idaho State Board of Correction for an indeterminate term of five years with no fixed minimum. Zichko was given credit for 219 days previously served.

Zichko appeals his conviction and sentence, raising those grounds asserted in his motion to dismiss before the district court and asserting error at trial in the admission of evidence and failure to give requested jury instructions.

## II.

### SECTION 18–8304(1) OF THE IDAHO CODE IS NOT UNCONSTITUTIONALLY VAGUE.

Idaho Code section 18–8304(1) provides as follows:

Any person who becomes subject to the provisions of this chapter on or after July 1, 1993, shall register, within five (5) days of coming into any county, with the sheriff of the county in which that person resides or is temporarily domiciled.

I.C. § 18–8304(1).

The legislative findings in Idaho Code section 18–8302 indicate that the purpose of the Sex Offender Registration Act is to aid law enforcement in the protection of their communities by requiring sex offenders to register with local law enforcement agencies. Section 18–8302 identifies those targeted to be "individuals who have pled guilty to or have been found guilty of sex offenses *who live within their [local law enforcement] jurisdiction.*" I.C. § 18–8302 (emphasis added).

■ Zichko maintains that I.C. § 18–8304(1) is unconstitutionally vague and must be declared void for vagueness, because it fails to define the terms "resides" or "temporarily domiciled."

The reasons underlying the void for vagueness doctrine are set forth in *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972):

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

408 U.S. at 108–09, 92 S.Ct. at 2298–99 (footnotes omitted).

*Grayned* has been cited with approval by this Court in *Voyles v. City of Nampa*, 97 Idaho 597, 599, 548 P.2d 1217, 1219 (1976), and *State v. Bitt*, 118 Idaho 584, 585–86, 798

P.2d 43, 44–45 (1990). In *Bitt* this Court reviewed the prior cases interpreting the void for vagueness doctrine and developed a test for its application. 118 Idaho at 587, 798 P.2d at 46. First, the Court must determine if the law regulates constitutionally protected conduct. *Id.* at 587–88, 798 P.2d at 46–47. If so, the Court must determine whether the ordinance precludes a significant amount of the constitutionally protected conduct. *Id.* at 588, 798 P.2d at 47. If that be the case, the law is likely overbroad. If the law passes these threshold tests, the final step is to determine if the law gives notice to those who are subject to the law of its requirements or limitations and sets forth adequate guidelines for those who must enforce the law so they may distinguish between what is prohibited and what is allowed. *Id.*

Idaho Code section 18–8304(1) does not regulate constitutionally protected conduct or preclude a significant amount of constitutionally protected conduct. Further, the statute gives notice to those who are subject to it of its requirements and establishes sufficient guidelines for those charged with enforcement to distinguish between what is lawful and what is not. The language in I.C. § 18–8302 encompassing those who live "within their [local law enforcement] jurisdiction," read together with the terms "resides" or "temporarily domiciled" in I.C. § 18–8304(1), is sufficient for those of ordinary intelligence to understand the conduct that is required. Persons subject to the law and those charged with enforcement have a reasonable opportunity to understand the conduct that is encompassed within the words "live within," "resides," or "temporarily domiciled." Those terms clearly connote more than a passing through or presence for a limited visit. "What ifs" can be posed to question isolated cases, but the concept enunciated in *Bitt* that a statute must have a "core of circumstances" to which the statute "could be unquestionably constitutionally applied" is present in section 18–8304(1) and can be understood by those of ordinary intelligence. 118 Idaho at 588, 798 P.2d at 47.

In this case Zichko filled out a welfare benefits application stating that he resided in Kootenai County. This indicates a clear understanding that he was more than a visitor or tourist who was passing through.[1] The statute gave him adequate notice of the obligation it imposed, and he violated it.

## III.

### ZICHKO'S ARREST WAS NOT PREMATURE AND DID NOT VIOLATE STANDARDS OF EQUAL PROTECTION.

■ Zichko maintains that he was arrested prior to the expiration of the five day period for registration. According to Zichko's argument, he arrived in Kootenai County on Thursday, March 31, 1994, and was arrested for failure to register on Thursday, April 7th. He maintains that this cannot be counted as a full five-day calendar period, because the driver's license bureau where sex offenders are required to register in Kootenai County was not open Saturdays and Sundays. Therefore, he maintains that he did not have five actual days to accomplish the registration. He argues, further, that if this constitutes five days within the meaning of the statute he was denied equal protection under the Idaho and United States Constitutions, because a person entering the county on a Sunday would have five actual days to comply with the statute.

There are several flaws with Zichko's position.

Zichko advised the manager of the St. Vincent De Paul shelter on March 31, 1994, that he had been in the county for a day prior to coming to the shelter. Therefore, the jury had evidence that he had entered Kootenai County on Wednesday, March 30th. He was arrested on Thursday, April 7th. This evidence is uncontradicted. Therefore, he had five full working days even if Saturday and Sunday were excluded.

Even if Zichko's time computation were accepted, he would not prevail. A reading of the Sex Offender Registration Act indicates that the legislature specifically intend-

---

**1.** There may appear to be an inconsistency with the concept of "temporarily" and "domiciled" together. However, the term "resides" clearly applied to Zichko, and the term "temporarily domiciled" connotes more than visiting or passing through.

ed to include Saturdays, Sundays, and holidays within the registration period. Section 18–8304(1) requires sex offenders to register "within five (5) days." Idaho Code section 18–8304(4), which governs the time period in which law enforcement agencies must forward the registration information to the Idaho Department of Law Enforcement, specifically excludes Saturdays, Sundays, and holidays by stating that the information must be forwarded "within five (5) working days." The difference between section 18–8304(1) and (4) indicates the legislature intended the five-day period in section 18–8304(1) to be five calendar days, including Saturday, Sunday and holidays.

■ Zichko's argument that counting Saturday and Sunday in the computation of the five days denies him equal protection likewise fails in this case. While the practice in Kootenai County was to have sex offenders register at the driver's license bureau, deputy Kent Johnston testified that special arrangements can be made to register convicted sex offenders on Saturdays or Sundays, including the officer going to the person who desires to register. Zichko made no effort to register and cannot claim that any policy of the county precluded him from registering.

## IV.

### ZICHKO WAS NOT LEGALLY PREVENTED FROM COMPLYING WITH SECTION 18–8304(1).

■ Zichko argues that he could not comply with section 18–8304(1) because a domestic violence protection order prohibited him from being within a three-mile radius of his former wife's place of employment. The driver's license bureau was within that radius. This proposition has been supported by argument but not by authority. The proposition fails for two reasons: (1) the claim has been waived; and (2) the facts established at trial refute the claim.

■ When issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered. Idaho Appellate Rule 35 (I.A.R.); *Langley v. State Indus. Special Indem. Fund,* 126 Idaho 781, 784, 890 P.2d 732, 735 (1995). Earlier formulations of this rule stated that an issue was waived if it was not supported with argument *and* authority. *See Simmons v. Ewing,* 96 Idaho 380, 529 P.2d 776 (1974) (appellant's failure to offer authority for position taken precluded Supreme Court from considering assignment of error); *Knudson v. Bank of Idaho,* 91 Idaho 923, 435 P.2d 348 (1967) (assignment of error would not be reviewed by Supreme Court where assignment was not supported in brief or argument); *Ore–Ida Potato Prods., Inc. v. United Pac. Ins. Co.,* 87 Idaho 185, 392 P.2d 191 (1964) (surety's discussion on appeal was mere argument and could not be considered on appeal); *Jewett v. Williams,* 84 Idaho 93, 369 P.2d 590 (1962). A party waives an issue cited on appeal if either authority or argument is lacking, not just if both are lacking. Zichko supported this assignment of error with argument but no authority. Consequently, he waived this issue on appeal.

Lest there be future litigation based on a claim that Zichko was deprived of a claim that he otherwise would have had, it is best to establish the record that his claim is not supported factually. Deputy Johnston testified that if necessary he would go to the location of the person seeking registration on any day of the week. Had he sought to register, Zichko would not have been subjected to the perils of appearing within the forbidden zone. Further, during the period for registration the domestic violence protection order was modified. During that period Zichko could have registered at the driver's license bureau had he elected to do so.

## V.

### THE DISTRICT COURT DID NOT ERR IN ADMITTING TESTIMONY CONCERNING ZICHKO'S WELFARE APPLICATION.

■ The district court allowed Glen Sommerfield to testify that Zichko made a welfare application and listed his residency as Kootenai County. Zichko maintains that this was error, since it allowed the jury to consider one definition of residency without receiving instructions from the court on other po-

tential definitions contemplated by section 18–8304(1).

■ The trial court has broad discretion in the admission of evidence, and its judgment will only be reversed when there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973–74, 829 P.2d 861, 863–64 (1992). Nevertheless, questions of relevancy are reviewed *de novo*. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993).

Relevant evidence means evidence having a tendency to make the existence of a fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. Idaho Rule of Evidence 401 (I.R.E.). All relevant evidence is admissible except as otherwise provided by the rules of evidence or other applicable rules. I.R.E. 402. The district court correctly ruled that Glen Sommerfield's testimony was relevant on the issue of where Zichko resided.

## VI.

## THE DISTRICT COURT DID NOT ERR IN FAILING TO GIVE ZICHKO'S REQUESTED JURY INSTRUCTIONS.

■ Zichko maintains that the district court erred in refusing to give jury instructions which he requested. The issue of whether a particular jury instruction is necessary and whether the jury has been properly instructed is a matter of law over which this Court exercises free review. *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). This Court reviews jury instructions to ascertain whether, when considered as a whole, they fairly and adequately present the issues and state the applicable law. *Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 50, 830 P.2d 1185, 1188 (1992).

■ Zichko claims the district court erred in refusing to give instructions he requested defining "residence" and "domicile." Terms which are of common usage and are sufficiently generally understood need not be further defined when instructing the jury. *State v. Gonzales*, 92 Idaho 152, 156, 438 P.2d 897, 901 (1968). Ordinarily the language employed by the legislature in defining a crime is deemed to be best suited for that purpose, and error cannot be predicated on its use in jury instructions. *State v. Aragon*, 107 Idaho 358, 362, 690 P.2d 293, 297 (1984); *State v. Herr*, 97 Idaho 783, 787–88, 554 P.2d 961, 965–66 (1976). The district court properly rejected Zichko's requested instructions defining residence and domicile because they are terms of common understanding, and because the proposed instructions did not define the actual terms used in the statute. The jury was instructed in the language of the statute, and that is sufficient in this case.

■ Zichko proposed an instruction to the effect that the Sex Offender Registration Act requires: (1) the Idaho Department of Correction to provide written notification of the duty to register under the act to any person committed to its custody for an offense identified in subsection (1)(a) of section 18–8303 of the Idaho Code; (2) that the notice be signed by such person; and (3) that the department retain one copy of the signed notice for its files and provide one to the person prior to their release from custody. I.C. § 18–8307(2) (Supp.1995). The trial court refused this instruction on the basis that compliance with this statute was not an element of the State's case against Zichko.

David Penick, the day shift control center corporal at the Idaho State Correctional Institution where Zichko was incarcerated, testified that he gave Zichko a written notification of his duty to register under the Sex Offender Registration Act, as required by section 18–8307(2). Penick testified that Zichko appeared to study the form before signing it. The State offered a copy of the signed form as evidence that Zichko did indeed receive notification of his duty to register as required by section 18–8307. Penick also testified that he was "almost positive" that he attached an unsigned copy of the form to Zichko's discharge papers. In addition, two witnesses testified that Zichko indicated to them that he knew he had a duty to register. Linda Libby, an acquaintance of Zichko's, testified that Zichko told her he did not intend to register, because he believed he would soon be exonerated of the charges based on some appeals he was filing.

Section 18–8307 clearly envisions that persons such as Zichko must receive written

notice of their duty to register under section 18–8304(1). Zichko does not dispute that he received written notice of his duty to register as required by section 18–8307(2). Rather, the focus of Zichko's claim on appeal, that the trial court erred in refusing his requested instruction, is that the State must establish beyond a reasonable doubt that Zichko received a copy of the written notice.

The clear purpose of section 18–8307(2) is to ensure that persons required to register as sex offenders pursuant to section 18–8304(1) of the Sex Offenders Registration Act are made aware of their duty to register before being discharged from custody. There is no dispute that Zichko was notified of his obligation in writing. Thus, compliance with section 18–8307(2) was not an issue. Under the facts of this case, the failure to instruct on the requirements of I.C. § 18–8307(2) was harmless.

█ "Where the evidence of the defendant's guilt is proven and is such as ordinarily produces moral certainty or conviction in an unprejudiced mind, and the result would not have been different had an error in the trial not been committed, the judgment of conviction will not be reversed." *State v. Pizzuto,* 119 Idaho 742, 778, 810 P.2d 680, 716 (1991), *cert. denied,* 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992), *overruled on other grounds, State v. Card,* 121 Idaho 425, 432, 825 P.2d 1081, 1088 (1991). When viewed as a whole, the jury instruction which the district court gave fairly and adequately presented the issues in this case and stated the applicable law. The trial court's refusal to instruct the jury on section 18–8307(2) was not a reversible error.

█ Zichko requested an instruction regarding the exclusion of Saturday and Sunday from the prescribed registration period. This was properly refused by the court. A requested instruction need not be given if it is contrary to the law. *State v. Eastman,* 122 Idaho 87, 89, 831 P.2d 555, 557 (1992).

## VII.

### THE SENTENCE IMPOSED WAS NOT EXCESSIVE.

Zichko maintains that the five-year indeterminate sentence was excessive. The dis-

trict court identified the four primary objectives in criminal punishment: (1) the protection of society; (2) deterrence of the individual in particular, and the public in general; (3) the possibility of rehabilitation; and (4) punishment or retribution for wrong doing. *State v. Wolfe,* 99 Idaho 382, 384, 582 P.2d 728, 730 (1978). The district court had the benefit of a presentence investigation report which contained a great deal of information about Zichko's background and character. He refused to be interviewed by the presentence investigator or otherwise cooperate with efforts to complete the report. His prior criminal history included the rape of his 15-year-old daughter. There was no abuse of discretion.

## VIII.

### CONCLUSION

The judgment of conviction and the sentence of the district court are affirmed.

McDEVITT, C.J., and TROUT and SILAK, JJ., concur.

JOHNSON, Justice, dissenting.

I respectfully dissent from the portion of the Court's opinion holding that I.C. § 18–8304(1) is not unconstitutionally vague. I am fundamentally perplexed as to how an intelligent person can determine when and where to register. The reason for my perplexity is revealed by the following colloquy I had with the attorney for the state during the oral argument in this case:

JUSTICE JOHNSON If you travel from north to south Idaho you better register in every county?

COUNSEL No, Justice Johnson, I don't believe that it goes to that extent under what common understanding of residency.

JUSTICE JOHNSON I am just spinning off of what you have told me, so I am trying to understand the meaning as you see it.

COUNSEL I understand.

JUSTICE JOHNSON If I travel from south to north Idaho which counties do I need to register? If I am a convicted sex offender?

COUNSEL Well, I think there is some interplay between the time ...

JUSTICE JOHNSON Which counties do I need to register in?

COUNSEL You would have to register in those counties where you reside or temporarily domicile.

JUSTICE JOHNSON That only puts me on a merry-go-round. What does that mean? Which counties do I have to register in? Under your very clear understanding of what the statute means?

COUNSEL Justice Johnson, I would say that you need to register in all of the counties.

JUSTICE JOHNSON So as I pass through Nez Perce County or the short time I am there I had better go to the sheriff's office and register?

COUNSEL I think there is a difference between passing through it and being temporarily domiciled.

JUSTICE JOHNSON I said I was traveling from north to south Idaho and you told me that I had better register in every county that I pass through didn't you?

COUNSEL I think though, that there is a difference between driving through it and passing through it.

JUSTICE JOHNSON Well, I am just spinning off of what you have told me the clear understanding is of these very clear terms.

COUNSEL And I understand that, Justice Johnson.

JUSTICE JOHNSON And that very clear understanding means if I stop for lunch in Lewiston, I had better register?

COUNSEL I think that you are just going through, Justice Johnson. I don't think that you kept ...

JUSTICE JOHNSON And if I stay the afternoon and go to the city park and eat my sandwich, had I better register?

COUNSEL I don't believe that you would need to.

JUSTICE JOHNSON And if I take a nap on the park bench, had I better register?

COUNSEL No, Justice Johnson.

JUSTICE JOHNSON If I stay the night, I had better register though?

COUNSEL It would be prudent.

JUSTICE JOHNSON So if I sleep there, stay a full twenty-four hour period, I am residing or temporarily domiciled in Nez Perce County?

COUNSEL I would believe so, Justice Johnson.

JUSTICE JOHNSON So it requires at least one night's stay? Is that it?

COUNSEL Well, I think also that you can look at the intent of the individual. But, I don't know that I am relying upon that. And what does the individual ...

JUSTICE JOHNSON Well, I am just working off of your statement that this is very clear what these terms mean, so I am trying to understand their clear meaning.

COUNSEL I understand, Justice Johnson.

JUSTICE JOHNSON And so, if I stay the night in Lewiston I had better register in Nez Perce County. But, if I then pass through the other counties on the way to Kootenai County, then I am just passing through and I don't need to register? But if I get to Kootenai County and I again stay the night, I had better register?

COUNSEL Yes, Justice Johnson.

JUSTICE JOHNSON And if I leave the next day and go back to my home in Idaho City, I will have registered in Nez Perce County and Kootenai County because I stayed there the night?

COUNSEL Yes, Justice Johnson. And I think the policy behind that is to track sex offenders.

JUSTICE JOHNSON Is there any notification to those who are given the required statutory notice that that is what the statute means? That each time they stay in a county for one night that they had better register?

COUNSEL Within the confines of the notice requirement there is not, Justice Johnson, as I under ...

JUSTICE JOHNSON Is it your statement that the state of Idaho is prosecuting all individuals who stay one night in a county and don't register?

COUNSEL I don't know that they are, Justice Johnson.

JUSTICE JOHNSON But you think they should?

COUNSEL Not necessarily. I think that . . .

JUSTICE JOHNSON Why shouldn't they, if that is residence?

COUNSEL I think that there is a great deal of prosecutorial and for that matter law enforcement discretion that can go into any charging decision. And I think that should . . . and prosecutors can take that into consideration. But when you look at the extremes, as an example, a backpacker who is in the wilderness area of the Sawtooth mountains, that individual, I believe could be prosecuted. Would a prosecutor prosecute that individual? I would seriously doubt it. But I would submit that it is possible under the definitions that we have . . .

JUSTICE JOHNSON If you are backpacking in the area of Bull Trout Lake where you cross from Boise County to Custer County three or four times in the course of a particular trail, you better run to Idaho City and then you better run to Challis and register?

COUNSEL That's going to be a difficult area, Justice Johnson. And there are going to be some areas that will have to be looked at in that particular area. Ah, but again, if we focus upon the policy which is a crafted right within the statute—that of protection of the community—that of assisting law enforcement—and implicitly tracking sex offenders so that we know where they are, that is the reason for the five-day time period. I know that Idaho's statute . . .

JUSTICE JOHNSON And you say that is the reason for the five-day time period. That's what I originally started out with, because the implication you gave me was, you had better register there if your are there five days. And now you tell me it doesn't take five days, it may only take one night. So, now you are

back to the five days. The five days is the period within which you have to register, not the time you must be there.

COUNSEL That is correct, Justice Johnson.

JUSTICE JOHNSON So the five days really has nothing to do with residence or temporary domicile does it?

COUNSEL No. No. It really doesn't. But what I was getting at is that that time five-day time period that you have to register is a very short time period when you compare it to other statutes across the nation. Most statutes give you thirty days, although there is one statute as I recall, I don't recall which state, that it was within forty-two hours of coming in. Now, it is simply a policy call on the part of the legislature to have this type of statute and rather encompassing sex offenders and bringing them within the confines by not defining specifically residency and temporary domicile. If they had wanted something more concrete, we wouldn't have had the word "temporary" there.

JUSTICE JOHNSON So, if I understand it correctly, if I travel from south Idaho to north Idaho, and I stay the night in Lewiston and I stay the night in Coeur d'Alene and I fly back to Boise, I'd still have within three days in which to register in both Lewiston and Coeur d'Alene. Is that correct? And I could come back and do it?

COUNSEL The way the statute is written, yes, Justice Johnson, you would have those five days within which to register. Yes. Absolutely.

JUSTICE JOHNSON And you think that would accomplish the policy the legislature had in the statutory scheme?

COUNSEL I think it would go beyond the policy that they were looking at. Because part of the policy I do believe includes that five-day period. They don't want sex offenders to be out in a particular area for a very long period of time. And I realize that that gets into—Does domicile require the five days? I would submit that it doesn't. But they give you five days within which to register. I don't believe that it is an extreme arbitrary statute that requires

someone to register where they are temporarily domiciled, or where they reside. And when you look at the context of the other statutes that have defined "residency," particularly Fish and Game statutes, motor vehicle laws—those are statutes where you are requesting something. And you are required to be somewhere within a period of time to qualify for the residency requirement. That is not what we have here. We do not have to be here in Kootenai County for five days before we are subject to the Sex Offender Registration Act. It is, as we have discussed Justice Johnson, a period of time in which you have to register. They are totally different. Which gets us right to the jury instructions on the issue of "domiciled" and "residency." First off, I would submit that this Court should not even address that issue because the issue is—the instructions that were provided were very ambiguous and they are not ah applicable to the situation that we have here. The Fish & Game statutes regarding "residency," even *Black's Law Dictionaries, Black's Law*, the definition of residency. I would submit it is as counsel has alluded to, it is confusing, it would be very confusing to a jury to have those definitions placed in front of them. And those definitions, particularly the instructions that were submitted, did not include the word "temporary," which modifies "domiciled," so they were not correct statements of law. They should have gone . . .

JUSTICE JOHNSON What is "temporary domiciled" as you understand it?

COUNSEL I am sorry, Justice Johnson.

JUSTICE JOHNSON What is "temporary domiciled" as you understand it?

COUNSEL Justice Johnson, "temporary domiciled" as I understand it, particularly with regards to this statute, is contrary to what counsel has alluded to, is in fact, the presence of being in a county.

JUSTICE JOHNSON How is that different from "residing"?

COUNSEL "Residing" isn't modified by temporary.

JUSTICE JOHNSON I understand that. But how is it different than "residing"?

COUNSEL "Residing" to me, indicates that you have some intent to stay within the county, for a period of time.

JUSTICE JOHNSON If your are "temporarily domiciled" it means that you don't have an intent to stay in the county and that's the reason that I would have to register in both Nez Perce County and Kootenai County, because I didn't have an intent to stay there, but I was temporarily domiciled there?

COUNSEL It means that you were temporarily there. That you were there for a very short period of time, whatever that duration is.

JUSTICE JOHNSON But you said that I had to stay at least one night?

COUNSEL I don't know, Justice Johnson, that the statute specifically calls for it. That is rather arbitrary on my part, quite frankly, to say that you have to stay.

JUSTICE JOHNSON But I am working off your clear understanding of what these clear terms mean.

COUNSEL I understand that, Justice Johnson, ah but I think the average individual, if I am even visiting in Kootenai County for a day, then I am temporarily present there.

JUSTICE JOHNSON Then you had better register, if you are a sex offender.

COUNSEL Absolutely. Absolutely.

JUSTICE JOHNSON The truth of the matter is that to be very careful any place you go, you better register, just so you don't slip up?

COUNSEL I believe that is true, Justice Johnson. It is a very . . .

JUSTICE JOHNSON The best thing to do, is that if you intend to live the rest of your life in Idaho, the first thing you better do is the register in all forty-four counties?

COUNSEL That would be a prudent thing to do as a sex offender.

JUSTICE JOHNSON They won't know where you are because you would be registered throughout the state. Because the state told you that is what you should do. [The attorney for the state] said that at the podium in this case.

COUNSEL Justice Johnson, it would be a prudent thing to do, but it is not a practical thing to do because you can't give the sheriff notice of where you are at at that time.

JUSTICE JOHNSON Well, but that's that's the point of my question. If I come back to Idaho City after having spent the night in Lewiston and Coeur d'Alene, and I register within the next three days, I tell them I am living in Idaho City, but that I spent the night in Lewiston, I spent the night in Coeur d'Alene, so I am registered?

COUNSEL In that context, yes, Justice Johnson, because you have given the sheriff the notification of where you were at or are at at that particular time. But I don't believe that you can go, as we have discussed, to the forty-four counties and say, I'm going to be living down here in Pocatello unless you can tell the sheriff in Kootenai County, that at a particular time you're going to be residing here, in Kootenai County. It is where you are at at the particular time. Where you are residing, where your are temporarily domiciled.

JUSTICE JOHNSON Is that where you are at at the time you register? That seems to be the meaning that you give to it. Because if I returned to Idaho City, you say that when I register that I should tell the sheriff in Nez Perce County and Kootenai County that I am residing in Boise County?

COUNSEL No, Justice Johnson, the statute requires that you give the sheriff notification and that sheriff is the sheriff in which you are residing or are temporarily domiciled.

JUSTICE JOHNSON So then I don't have to register in Nez Perce or Kootenai County once I am back in Idaho City?

COUNSEL But if you were residing or temporarily domiciled during that five-day period in Kootenai County, you would have to.

JUSTICE JOHNSON Well, but I had the five days and by the end of the five days I am back in Idaho City and you say I can't tell the sheriff in Nez Perce County I am residing in Idaho City, because I had be residing in Nez Perce County.

COUNSEL If that is what I said, Justice Johnson, I misspoke. What I was saying is that you would tell the sheriff in Kootenai County that on such and such a day I was residing or temporarily domiciled in Kootenai County.

JUSTICE JOHNSON Why can't I give that same kind of notice for all forty-four counties? That I passed through all forty-four and took a tour of the state and I am back in Idaho City and I want to register in all forty-four counties? Then I will have fulfilled the law?

COUNSEL If it were within the five-day period. For example, if you could make all forty-four counties without . . .

JUSTICE JOHNSON I've done it.

COUNSEL Okay, then yes, that would work.